IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| David Brian Miller | ) | Case No. 23-20725 |
| Debtor. | ) | Chapter 11 |

## MOVANT'S TRIAL BRIEF/STATEMENT OF ISSUES
## ON MOTION FOR RELIEF FROM STAY

Movant, David L. Miller, Trustee of the David L. Miller Revocable Trust, hereby submits this Statement of Issues/Trial Brief in support of his Motion for Relief from Stay. Principally at issue here is whether the Debtor has an equitable interest in real estate owned in Movant's name, and if so, in what way does it affect Movant's request for relief from stay to obtain possession of that real estate.

### Factual Background

Following a brief round of discovery, the following facts have emerged:

1. Movant, David L. Miller, as trustee of the David L. Miller Revocable Trust, owns the real estate at 13124 Meadow Lane, Leawood, Johnson County, Kansas 66209 (the "Real Estate").

2. Debtor currently occupies the Real Estate and has done so since around August, 2012.

3. On or about October 26, 2012, Movant and Debtor entered a Contract for Deed for Debtor to purchase the Real Estate from Movant.

4. Per the Contract for Deed, Debtor agreed to pay Movant the aggregate principal of $244,000, with $3,000 the Debtor had already paid in rent to be credited toward that principal balance, leaving principal of $241,000 remaining to be paid under the Agreement.

5. The Contract for Deed provided for Debtor to make monthly payments of principal to Movant of $1,500 on the tenth of each month starting in November 2012. It further called for Debtor to pay all insurance and taxes on the Real Estate.

6. The Contract for Deed also provided that Debtor would be required to pay toward the purchase, 50% of any gross bonus that he might receive from Highland Park Funeral Home or Highland Park Cemetery (Debtor's employers, owned by Movant).

7. As long as Debtor remained current on his payment obligations, the Contract for Deed would bear no interest; otherwise it would bear 4% interest.

8. Debtor made some payments on the contract (the exact amount is not stipulated) until around April of 2016.

9. The Contract for Deed contemplates a future sale of the Real Estate conditioned on Buyer's full compliance:

> WARRANTY DEED. Upon payments of all of the amounts to be paid hereunder by Buyer, and upon Buyer fully complying with all of the other terms and provisions hereof, Buyer shall receive a Warranty Deed for all of said property which shall warrant the title as of the date of this agreement and shall also warrant the title against all encumbrances or liens thereon made by Seller after the date of this agreement.

10. The contract's default provision contemplated that the Movant had the option either to terminate the contract and re-take the Real Estate while treating all previously paid amounts as rent, or to require specific performance:

> DEFAULT: In the event Buyer shall fail to make the monthly payments required hereunder to the extent that he is in default in making any of said payments for a period of thirty (30) days, or if the Buyer fails to pay the taxes and insurance premiums as set out in this contract, or if the Buyer commits waste, attempted to assign this Contract for Deed in violation of the terms hereof, creates a lien on the property without the written consent of Seller or in any other way violates or breaches the terms of this Contract for Deed, the Seller may, at Seller's option, declare it null and void, and all rights of the Buyer, hereunder, shall thereupon end and all money paid

and improvements made hereunder shall then be retained by the Seller as rent and liquidated damages for the said non-performance and Seller shall thereupon be entitled to immediate possession of said real estate without notice. In the event Seller exercises its option to cancel this contract as aforesaid, upon cancellation and repossession by the Seller, all parties shall thereunder be released from further liability hereunder; however, if the Seller does not exercise the option to terminate this contract, Seller may require specific performance or exercise any other rights or remedies available to Seller by law as otherwise provided in this Contract for Deed.

11. On or about April 20, 2016, Movant told Debtor that he did not have to pay any more toward principal on the contract, that Movant would regard all prior payments as rent, and that he intended to leave Debtor the Real Estate at his death.

12. Debtor made no more payments of principal after that point but continued to live in the Real Estate while paying most of the taxes and insurance applicable to it.

**The following facts bear on Debtor's unclean hands and on a right of set-off on any equity Debtor might have accumulated (all of which Movant disputes):**

13. Movant is the owner of Highland Park Investments, Inc.

14. In 2021, Movant caused Highland Park Investments to loan to Debtor the principal amounts of $160,000; $135,000; and $95,000, memorialized by notes which are the subject of Claims 2 through 4 filed in the claims register in this case. The first of these notes was made around January 26, 2021 and the second and third notes were made around November 15, 2021.

15. Earlier, around May 15, 2019, Movant also caused Highland Park Investments to provide Debtor with a revolving loan memorialized by a promissory note which states that it is secured by, among other things, the Real Estate which is the subject of this proceeding.

16. The Revolving Note applied a 5% interest rate to all advances, with interest beginning to accrue as of May 15, 2019.

3

17. Movant advanced or caused to advance at least the principal amount of $49,065.65 under the Revolving Note, which has accrued interest of $9,667.51 through the Petition date.

18. Debtor drafted each of the promissory notes discussed herein.

19. Each promissory note recites at Section II thereof that it is secured by a pledge of real estate.

20. Although there was not a separate mortgage or deed of trust recorded to perfect the pledges, Debtor agreed at the end of Section V of each note it would come due "if there is a sale, transfer, assignment, or any other disposition of any real estate pledged as collateral for the payment of this Note, or if there is a default in any security agreement which secures this Note."

21. Debtor sold or caused to be sold 17 W. Bannister Rd., Kansas City MO (stated to secure the note in the principal amount of $95,000 Section II); 642 NW Valleybrook Rd., Blue Springs MO (stated to secure the note in the principal amount of $135,000); and 209 W 97th St., Kansas City MO (stated to secure the note in the principal amount of $160,000) without notifying Movant that he did so.

22. By letter dated April 4, 2023, movant notified debtor in writing that the Contract for Deed was terminated due to non-payment and that Debtor had until May 31, 2023 to vacate the Real Estate.

23. Debtor did not respond to the aforedescribed letter and made no attempt to resume payments under the Contract for Deed, nor did Debtor vacate the Real Estate by May 31, 2023 or any time.

24. Movant initiated an eviction action in the District Court of Johnson County, Kansas by petition filed June 6, 2023.

25. Debtor filed his Chapter 13 Petition in this case on June 28, 2023. By omitting their mention and scheduling different real property as assets of Debtor's companies, the Petition effectively disclosed for the first time that Debtor had sold or caused to be sold 17 W. Bannister Rd., Kansas City MO; 642 NW Valleybrook Rd., Blue Springs MO; and 209 W 97th St., Kansas City MO.

## Legal Memorandum

**A. The Contract for Deed was terminated in April 2016 and the relationship between Movant and Debtor was converted to that of landlord and tenant. Debtor has no equity in the Real Estate and no right to enforce a future gift.**

Debtor cannot have acquired equity in the Real Estate because he is now a mere tenant. By Stipulation filed (Doc 51), both Movant and Debtor agree that in April 2016, they had a conversation where Movant told Debtor that he did not have to make any more payments under the Contract for Deed and that all payments made prior to that date would be regarded as rent, and that Movant intended to leave Debtor the Real Estate when Movant died. Debtor was content with that arrangement and made no more payments of principal to Movant but continued to live in the Real Estate while paying most of the insurance and taxes on it. (At least one of the advances under the Revolving Note discussed above was for the property taxes).

Debtor's expectation for obtaining title to the Real Estate was converted from enforceable contract rooted in consideration to future gratuity. It is well settled that parties are always free to modify a written contract by a subsequent agreement, either written or oral, and that such subsequent agreements do not violate the parol evidence rule. *Cude v. Tubular & Equip. Servs., LLC*, 53 Kan. App. 2d 287, 294, 388 P.3d 170, 175 (2016). As Debtor was, at that point, no longer a purchaser, Movant's permission for Debtor to remain in the Real Estate transformed the parties' relationship to one of landlord-tenant. Until the future gift would be effected, Debtor would be Movant's tenant at will. "Any person in the possession of real property with the assent of the owner

5

is presumed to be a tenant at will . . ..” K.S.A. 58-2501. A tenancy at will is terminable anytime – all it takes is thirty days' notice. K.S.A. 58-2504.

To the extent that Debtor takes the position that the Real Estate somehow became his because of Movant's intention to leave him the house on death, it did not. "To constitute a gift inter vivos, there must be a gift absolute and irrevocable, taking effect immediately, the donor delivering the property to the donee, or some one (sic) for him, and parting with all future dominion over it." *Calvin v. Free*, 66 Kan. 466, 71 P. 823, Syl. ¶ 2 (1903). "[T]here must not only be an intention to gratuitously give, but an absolute transfer of the property, which takes immediate effect." *Gallagher v. Donahy*, 65 Kan. 341, 69 P. 330, Syl. ¶ 1 (1902). By retaining ownership and expressing an intention to make a gift in the future, Movant plainly made no gift inter vivos of the Real Estate. *Id*.

Nor did Movant make a gift causa mortis:

> To constitute a gift causa mortis, the gift must be made in contemplation of the near approach of death, to take effect absolutely only upon the death of the donor and before that of the donee. There must be a delivery of the property to the donee, or some one (sic) for him. Subject to the right of recall in case the donor does not die, or in case the donee die first, the donor must part with all dominion over the donated thing.

*Id.*, Syl. ¶ 1 (1903).

> The facts set out do not disclose a gift inter vivos, because such gift was not to take effect immediately. Neither do they disclose one causa mortis, because it was not made in contemplation of the near approach of death.

*Rogers v. Richards*, 67 Kan. 706, 74 P. 255, 256 (1903) citing *Calvin v. Free*, 66 Kan. 466, 71 P. 823 (1903). Here, movant did not even record a transfer-on-death deed pursuant to K.S.A. 59-3502. Even had he done so, he could have revoked at any time. K.S.A. 59-3503(a).

An oral promise to dispose of real estate at death in some particular way creates no rights at all. "[E]quity will not specifically enforce an oral promise to devise real estate." *In re Boller's*

*Estate*, 173 Kan. 30, 38 244 P.2d 678, 684 (1952). This makes sense in light of the practically universal and uniform rule that sales of real estate, and dispositions on death of practically anything, require a writing. *See, e.g.* K.S.A. 33-106 (sales of real estate to be in writing), K.S.A. 59-3502 (transfer-on-death deeds to be in writing, properly executed and recorded); K.S.A. 58-2401 (trusts concerning real estate to be in writing); K.S.A. 59-608 (oral will recognized only in very limited circumstances and never for real estate).

    **B. The plain terms of the Contract for Deed deprive Debtor of any ability to accumulate equity until complete payment is made.**

Were the Contract for Deed still applicable to the parties, it would be of no help to Debtor. "In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms." *Darby v. Keeran*, 211 Kan. 133, Syl. ¶ 2, 505 P.2d 710 (1973). The contract in this case, which conditions delivery of a warranty deed on "payments of all amounts to be paid hereunder by buyer" and which converts all previous payments to rent in lieu of complete payment, is much like the contract discussed in *Pickens v. Campbell*, 104 Kan. 425, 179 P. 343 (1919), which acknowledged the seller's rights to recover the entire property due to the named buyer's failure to pay the full purchase price for it. Notably, the forfeiture clause in *Pickens* was virtually identical to the one here:

> It is further agreed between the parties to these presents that said party of the second part shall pay all taxes or assessments becoming chargeable to or upon said premises after this date; and if default be made in fulfilling this agreement, or any part thereof, by or on behalf of said party of the second part, this agreement shall, at the option of said party of the first part, be forfeited and determined, and said party of the second part shall forfeit all payments made by him on the same, and such payments shall be retained by said party of the first part in full satisfaction, and in liquidation of all damages by him sustained, and he shall have the right to re–enter and take possession of said premises. * * *

7

*Pickens v. Campbell,* 104 Kan. 425, 179 P. at 344. Based on the contract language, the *Pickens* court concluded that that

> [T]he form of contract used was not one of present sale; it was one to sell. No obligation on the part of the vendor to convey arose except on receiving the stipulated sums of money, at the time and in the manner specified. In case of default, the right to forfeit and to re–enter was expressly reserved. * * * Title was withheld; performance by the vendee at the time stipulated was a condition precedent to the acquisition of title; default entailed forfeiture of payments already made, and right of possession; the vendor was then at liberty to re–enter or to invoke the remedy of ejectment; and insertion of the formula, "Time is of the essence of this contract," would have been superfluous.

*Id*. Thus,

> The equitable doctrine that, when land is sold on deferred payments and the deed is to be delivered when the payments have been made, the vendor becomes a trustee of the title for the benefit of the vendee, does not apply to such a contract. The entire title remains in the vendor until the vendee has performed.

*Id*. at 343, Syllabus.

> * * * The legal title has not passed to [the vendee], because no deed or other conveyance has yet been made; and the equitable title has not passed, because the land has not been paid for, and because – on account of the provisions for forfeiture – it is clearly the intention of the parties, as indicated in the contract, that such title shall not pass until the land is paid for.

*Id*. at 345 (citations omitted).

The result in *Pickens v. Campbell* "was premised on the proposition that the contracts involved were to effect a future rather than a present sale." *In re Snyder's Estate*, 199 Kan. 487, 495 (1967).

Besides the present/future sale distinction which deprives Debtor of any equitable interest in the Real Estate, "[o]rdinarily, a purchaser in default on a land installment sales contract cannot

recover the value of improvements placed on the land while the purchaser was in possession."

*Barnett v. Oliver*, 18 Kan.App.2d 672, 858 P.2d 1228, 1231 Syl. ¶ 9 (1993).

### C. Debtor's unclean hands would deprive him of any equitable interest under the Contract for Deed, were it still in place.

Stung by Debtor's non-communication over numerous substantial loans from Movant's company, Highland Park Investments, to him, and recognizing that the Real Estate provided Movant his most realistic chance of recovery, Movant sought to reclaim possession of the Real Estate to stop the bleeding. Not being an attorney and not understanding the significance of the parties' April 2016 conversation and their change in behavior consistent with that conversation, Movant assumed that the Contract for Deed somehow still governed their relationship relative to the Real Estate, and proceeded accordingly. From the properties listed in Debtor's Petition and Schedules, we now see that Debtor's silence toward Movant was his way of concealing the fact of the house sales that would have triggered the repayment of in full of the Highland Park Investments loans. Although the houses were not properly the subject of deeds of trust, Debtor was obliged to notify Movant when they sold. Debtor misled Movant through his silence and evasion. Now Debtor wants to use "equity" as a weapon against the one to whom he owed complete candor, further to thwart his recovery. If the Contract for Deed is somehow regarded as still relevant to the outcome of this case, this reality should be borne in mind.

> The clean hands doctrine is based upon the maxim of equity that he who comes into equity must come with clean hands. It provides in substance that no person can obtain affirmative relief in equity with respect to a transaction in which he has, himself, been guilty of inequitable conduct.

*Green v. Higgins*, 217 Kan. 217, 535 P.2d 446, 447, Syl. ¶ 1 (1975).

Here Debtor requests equity but has not done equity. He took hundreds of thousands of dollars in cash from Movant and concealed from him key information affecting the loans. He

should not be able to compound the insult with a claim to Movant's Real Estate, which he was happy to occupy gratuitously for the past seven years.

   **D. The Revolving Note recites that it is secured by the Real Estate; thus, amounts due under the Revolving Note would offset any buildup of equity which might otherwise be found to exist.**

As noted above, around May 15, 2019, Movant caused his company Highland Park Investments to provide Debtor with a revolving loan memorialized by a promissory note which states that it is secured by the Real Estate. Under this Revolving Note, the principal amount due from Debtor is $49,065.65. Interest through the Petition date is $9,667.51 and it should be deemed to continue accruing to the extent of any equity Debtor might have in the Real Estate, at $6.72 per diem. As Movant owns the Real Estate, a recorded mortgage would be unnecessary – Movant should not have to record a mortgage to himself or the company he owns to perfect a security interest. Debtor himself is powerless to mortgage it but as between Movant and Debtor, the security interest is attached. Notice to the rest of the world through perfection is irrelevant while Movant owns the Real Estate. Whatever Debtor claims to have paid to justify his assertion of an equitable interest in the Real Estate, it should be reduced by the amount secured by the Real Estate owned in Movant's name, as the advances ultimately originated from Movant. The fiction of the corporate form should not inhibit such a fair result. "The rule is well recognized that equity will give whatever relief the facts warrant. The distinguishing feature of equity jurisdiction is that it possesses full power to apply settled rules to unusual conditions and to mold its decree so as to do equity between the parties." *Barnett v. Oliver*, 18 Kan.App.2d 672, 858 P.2d 1228, 1230 Syl. ¶ 5 (1993).

   **E. Any equity that Debtor might be found to have in the Real Estate would not permit him to continue to occupy it, as the applicable remedy would be equitable foreclosure.**

In those cases where a contract for deed has been interpreted to result in an equitable interest in the buyer, the seller is treated as holding a secured interest in the property to protect future payments. *Graham v. Claypool*, 26 Kan. App. 2d 94, 95-96, 978 P.2d 298, 299 (1999). In such an instance, the "equitable ownership interest . . . must be foreclosed upon." *Lewis v. R & K Ranch, LLC*, 41 Kan. App. 2d 588, 595, 204 P.3d 642, 643, Syl. ¶ 4 (2009).

Movant understands that Debtor intends to suggest that Debtor be allowed to amend the petition to schedule Movant as a secured creditor relative to the Real Estate and to schedule a remaining debt of around $145,000 (which Movant disputes), such that Debtor's eventual Plan would propose monthly payments of around $2,400 toward the Real Estate over five years. Movant notes that the current Petition reveals that Debtor has only around $1,400 per month after current expenses to meet all Debtor's delinquent obligations, and that house payments were not among those scheduled.

Leaving the Real Estate out of Debtor's Schedule A was a recognition of this reality and constituted an unstated acknowledgement that Debtor's occupation of the Real Estate is and has been essentially gratuitous and not rooted in the Contract for Deed. Debtor scheduled no interest in the Real Estate and no obligation with respect to it, but out of desperation now claims an equitable interest which still cannot forestall the inevitable.

**Conclusion**

WHEREFORE, pursuant to 11 U.S.C. § 362(d) and §365, Movant respectfully requests that the Court grant it relief from the automatic stay or comfort order to permit *in rem* enforcement of its rights to possession of the Real Estate, including necessary notices/demand(s) and recovery of possession through legal process (but not a money judgment); that the 14-day stay of execution

11

Case 23-20725    Doc# 53    Filed 09/22/23    Page 11 of 13

contemplated by Rule 4001(a)(3) be eliminated; and for such other and further relief as is just and equitable.

*McDowell, Rice, Smith & Buchanan P.C.*

By: */s/ Hugh L. Marshall*
Hugh L. Marshall  KS #19020
605 W. 47th Street, Suite 350
Kansas City, Missouri  64112
816/753-5400   FAX: 816/753-9996
hmarshall@mcdowellrice.com
ATTORNEY FOR DAVID L. MILLER

# CERTIFICATE OF SERVICE

The undersigned certifies that a complete copy of the foregoing instrument along with the Exhibits, in any, was filed with the court using the CM/ECF which sent notification to all parties of interest participating in the CM/ECF System (with a copy to be mailed to any individuals who do not receive electronic notice from the Clerk) this September 22, 2023:

>Ryan Blay
>WM Law
>15095 W 116th Street
>Olathe, KS 66062
>Email: blay@wagonergroup.com
>ATTORNEY FOR DEBTOR
>
>OFFICE OF THE U.S. TRUSTEE
>301 N. Main, Suite 1150
>Wichita, Kansas 67202
>Email: ustpregion20.wi.ecf@usdoj.gov
>U.S. TRUSTEE
>
>Richard A Kear
>DOJ-Ust
>301 N. Main Street, Ste 1150
>Wichita, Kansas 67202
>Email: Richard.kear@usdoj.gov
>
>John Nemecek
>DOJ-Ust
>301 N. Main Street, Ste 1150
>Wichita, Kansas 67202
>Email: john.nemecek@usdoj.gov
>
>Jordan M Sickman
>DOJ-Ust
>301 N. Main Street, Ste 1150
>Wichita, Kansas 67202
>Email: jordan.sickman@usdoj.gov
>
>*/s/ Hugh L. Marshall*
>Hugh L. Marshall #19020