**SO ORDERED.**

**SIGNED this 15th day of November, 2023.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**David Brian Miller,**

                **Debtor.**

Case No. 23-20725
Chapter 11

## Memorandum Opinion and Order
## Denying David L. Miller's Motion for Relief from Stay

David L. Miller, as Trustee of the David L. Miller Revocable Trust

dated February 26, 1996 (Trust), moves for relief from stay to obtain a state

court order removing his son, Debtor David Brian Miller, from his residence.

The property is being sold by the Trust to Debtor under a contract for deed,

whereby the Debtor became the equitable owner of the property, even though

the Trust remains the legal owner. Debtor and his family occupy the property

as their residence. The motion contends that stay relief should be granted under § 362(d)[1] because the estate has no interest in the real property. Two alternative arguments are presented. First, the Trust contends the contract for deed was converted to a lease, which the Trust may elect to terminate. Alternatively, if the contract for deed was not terminated, the Trust contends Debtor defaulted in making payments under the contract for deed, entitling the Trust to enforce the contract's forfeiture remedy. The Court rejects both contentions and finds the Trust is not entitled to relief from stay.

## I. Findings of Fact

On October 26, 2012, Debtor David Brian Miller (Debtor) and David L. Miller as Trustee of the Trust[2] entered into a contract for deed (Contract), whereby the Trust agreed to convey a residence in Leawood, Kansas (Residence) to Debtor for $244,000. David L. Miller is Debtor's father. Debtor was given immediate possession. Three thousand dollars previously "paid in rent" was applied to the purchase price, and the $241,000 balance was payable without interest in monthly installments of $1,500. In addition,

---

[1] 11 U.S.C. § 362(d). All references in the text to title 11 are to the section number only.

[2] For purposes of this memorandum, the Court uses "Trust" to refer to the David L. Miller Revocable Trust dated February 26, 1996. David L. Miller individually is referred to David L. Miller.

2

Debtor was to pay toward the Contract balance one half of any gross bonus that Debtor received from his father's businesses, Highland Park Funeral Home and/or Highland Park Cemetery. The Contact provides Debtor will pay all taxes and insurance premiums and maintain the Residence.

The Contract default paragraph includes the following as to the Trust's remedies:

> In the event Buyer shall fail to make the monthly payments required hereunder . . . for a period of thirty (30) days . . . or in any other way violates or breaches the terms of this Contract for Deed, the Seller may, at Seller's option, declare it null and void, and all rights of the Buyer, hereunder, shall thereupon end and all money paid and improvements made hereunder shall then be retained by the Seller as rent and liquidated damages for the said non-performance and Seller shall thereupon be entitled to immediate possession of said real estate.[3]

The Contract does not include an anti-waiver or time of the essence provision. Upon making payments of $244,000 and complying with all provisions of the Contract, Debtor is to receive a warranty deed for the Residence. Three thousand dollars in rent was applied to the obligation, leaving a balance of $241,000.

Debtor has continuously lived in the Residence since 2012. Debtor believes the Residence has a current value of about $500,000. The Trust holds

---

[3] Exh.1 p. 3.

3

legal title. According to records contemporaneously maintained by Wanda Miller, Debtor's ex-wife, Debtor timely made all payments in accord with the Contract from October 2012 though April 2016, for a total of approximately $100,000.[4] Debtor has also timely paid the real estate taxes and insurance since entering the Contract. Debtor has maintained the Residence and made significant improvements by remodeling the kitchen and adding a bathroom, to accommodate his mother's needs.

On about April 20, 2016, Debtor, David L. Miller, and Norma Miller, Debtor's mother and the ex-wife of David L. Miller, met regarding the Contract. According to a joint stipulation of facts,[5] at the meeting David L. Miller told "Debtor he did not need to make any more payments on the house and that all payments prior would be treated as rent." It is also stipulated that during the conversation, David L. Miller told Debtor he "expected to leave" Debtor the real estate when David L. Miller died. Debtor was elated, ceased making payments, and testified he expected to get the house when his father died. The last entry on the payment ledger maintained by Debtor's ex-wife is dated April 1, 2016. David L. Miller testified that in April 2016, he had

---

[4] Exh. B. When testifying about the payment records, Wanda Miller referred to the Contract debt as a mortgage.

[5] Doc. 58.

4

elected to terminate the Contract and his relationship with Debtor was transformed into landlord/tenant. Debtor testified he regards the Contract to be in place, but he no longer needs to make payments. Debtor and David L. Miller have had no conversations regarding the Contract since the April 20, 2016 meeting.

On May 15, 2019, Debtor and Debtor's companies, DALP Investments, Inc. and Premier Properties, as borrowers, entered into a draw note with lender Highland Park Investments, Inc. (David L. Miller's company). The note, drafted by Debtor, states it is secured by the Residence, and other collateral, but no lien perfection documents were prepared or recorded. The note provides the unpaid principal and accrued interest at 5% are payable in 12 installments, commencing 60 days after the finalization of Debtor's divorce. The record does not include the evidence of the total draws, payments, or the amount currently due, but it is clear David L. Miller believes the loan is in default.

Sometime in the early 2000's Debtor and David L. Miller began flipping houses together. They entered in to at least ten similar deals, whereby David L. Miller through Highland Park Investments provided funds for Debtor to purchase real estate that would be quickly resold. The record contains promissory notes for three deals, one note dated January 26, 2021 and two

5

dated November 15, 2021. In each note, Debtor and his companies agree to pay lender Highland Park Investments interest on the unpaid principal of 5% per year, plus 3% of the sale price of the financed property. Each note states it is secured by the property being purchased, but no mortgages were prepared or recorded. The notes include specific due dates less than a year after origination, but it appears David L. Miller understood each note to be due when the financed property was sold. On dates not in the record, David L. Miller learned Debtor had sold the properties but not repaid the loans.

The foregoing alleged defaults caused David L. Miller to change his mind about allowing Debtor to reside in the Residence without charge. On April 4, 2023, the Trust, through its attorney, sent a letter addressed to Debtor's attorney describing terms of the Contract, quoting the default provisions, and stating; "Buyer has made no payments under the Contract for Deed in years. Seller, therefore exercises its option to declare the Contract for Deed null and void, and demands that Buyer vacate the Real Estate by no later than May 31, 2023."[6] Debtor did not respond. On June 1, 2023, David L. Miller hand delivered and posted a letter addressed to Debtor and all occupants of the Residence, stating that if the Residence was not vacated

---

[6] Doc. 14 p. 13.

6

within three days from the date of the letter he will commence court action to eject Debtor and all occupants.[7]

On June 6, 2023, the Trust filed a petition against Debtor for eviction pursuant to K.S.A. § 61-3804 in the District Court of Johnson County, Kansas. The petition recites the execution and terms of the Contract for Deed, quotes the default provision, states Debtor has not made payment in many years, and alleges the Trust is entitled to possession of the Residence. A copy of the Contract, the April 2, 2023 letter, and the June 1, 2023 notice are attached to the eviction petition.[8]

Debtor filed for relief under Chapter 11 on June 28, 2023, the date a hearing was scheduled in state court. Debtor has elected to proceed under Subchapter V. Debtor's amended Schedule A includes an equitable interest in the Residence based upon the Contract.[9] It states, "There is ample equity in the real estate above and beyond the balance of the contract for deed."[10]

On June 30, 2023, the Trust filed the motion for relief from stay

---

[7] *Id.* p. 27.

[8] *Id.* pp. 15-27.

[9] Doc. 39 p. 9.

[10] *Id.*

7

presently before the Court (Motion).[11] Copies of the Contract and the state court eviction petition (including all attachments) are filed with the Motion. Like the eviction petition, the Motion recites the execution and terms of the Contract for Deed, quotes the default provision, states Debtor has not made payment in many years, and alleges the Trust is entitled to possession of the Residence. It further alleges the Residence is property of the Trust and not property of the estate. Relief from stay under § 362(d) and § 365 is requested to permit *in rem* enforcement of the right to possession. Debtor opposes the Motion.[12]

## II. Analysis

### A. The Trust's contentions.

Before addressing the merits of the Trust's Motion, the Court pauses to note that this Motion, and perhaps the bankruptcy filing itself, arise out of a dispute between father and son. This Court is frequently presented with the task of resolving the financial aspects of family disputes, but often, as in this case, the parties have difficulty in framing the issues in the manner required to obtain the relief made available under the Code.

---

[11] Doc. 14.

[12] Doc. 22.

The Trust's motion for relief from stay, as noted above, requests stay relief based on § 362(d) and § 365, arguing it is entitled to relief from stay "for cause as the Debtor has failed to adequately protect Movant's interest in the Premises by failing to make payments to Movant as required and offers no plan for adequate protection or prompt cure moving forward."[13] In advance of trial, the Trust then filed a trial brief. The trial brief contends the Trust is entitled to stay relief to obtain possession of the Residence principally because Debtor has no interest in the property.[14]

The Trust's trial brief does not identify the particular subsections of § 362(d) on which it relies. The only reference to the Code is in the conclusion, which states, "pursuant to 11 U.S.C. § 362(d) and 365, Movant respectfully requests that the Court grant it relief from the automatic stay or a comfort order to permit *in rem* enforcement of its rights to possession of the Real Estate."[15] Although § 362(d) contains four subsections, the Trust does not identify those on which it relies. In addition, although the Motion and the Trust's brief both cite § 365, which addresses executory contracts and unexpired leases, the Trust does not explain the section's relevancy.

---

[13] Doc. 14 p. 3 ¶ 14.

[14] Doc. 53. Additional arguments made in the Trust's trial brief are addressed at the end of this memorandum.

[15] Doc. 53 p. 11.

The Debtor filed a response to the Motion, comprised of denial of factual allegations and assertion of two affirmative defenses, laches and payments by Debtor for taxes, insurance, and improvements of the Residence.[16] Debtor did not file a trial brief or otherwise respond to the Trust's arguments. At trial, Debtor argued the Contract has not been changed into a lease, there is no cause for relief from stay, and the estate has equity in the Residence.

Given the failure of the Trust's pleadings to define its grounds for the relief sought, the Court is left to "read the tea leaves" and ascertain the issues which it believes the Trust intends to present. After considering the pleadings, the parties' arguments, and the evidence presented, the Court makes two conclusions to focus its resolution of the Motion. First, the Court finds the Trust is not intending to pursue any issues under § 365, even though the section is cited in both the Motion and the Trust's trial brief. The Court makes no findings regarding § 365, other than that the Trust is not moving for any relief under the section. Second, the Court finds the Trust is seeking relief from stay under two subsections of § 362(d), subsection (d)(1), providing for relief from stay for cause, and subsection (d)(2)(A), providing for relief from stay with respect to an act against property of the estate when the estate has no equity in the property.

---

[16] Doc. 22 p. 2.

10

## B. Applicable law

Subsection 362(a) provides the filing of a voluntary petition under § 301 operates as a stay of an action or proceeding against the debtor and any act to obtain possession of property of the estate. Subsection 362(d) provides upon the request of a party in interest, after notice and hearing, the Court shall grant relief from stay for numerous reasons. The Court finds the first two of those reasons are relevant here. They are

> (1) for cause, including lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property of the estate,
> > (A) if the debtor does not have equity in the property; and
> > (B) the property is not necessary for an effective reorganization.

Section 362(g) provides that at any hearing under §362(d) concerning relief from stay, the party requesting relief has the burden of proof on the issue of the debtor's equity in the property. "If evidence as to the debtor's equity is not preponderantly in favor of the [party seeking relief] or is in equilibrium, the court must find the [movant] has failed to persuade the court that the

11

debtor lacks equity."[17] When determining an estate's interest in property for purposes of stay relief, the Court looks to state law.[18]

### C. The Court rejects the Trust's argument that it is entitled to relief from stay for cause under § 362(d)(1) because the Contract was terminated in 2016.

The Court understands the Trust's first argument as being directed to relief from stay for cause under § 362(d)(1) to allow it to evict Debtor through a pending state court action.[19] That first argument is that an eviction action is appropriate because the Contract was terminated in April 2016 and the relationship between Debtor and the Trust was converted to that of landlord and tenant.

The pursuit of pending state court litigation is recognized as "cause" for purposes of § 362(d)(1). The case *In re Curtis*,[20] identifies twelve factors which are relevant in considering whether to grant such relief. They focus on the nature of the pending action and its relationship to the bankruptcy estate. Rather than addressing the *Curtis* factors, the Trust requests this Court to

---

[17] 2 Norton Bankr. L. & Prac. 3d § 43:54.

[18] *Butner v. United States*, 440 U.S. 48 (1979).

[19] The Trust's pending state court action is pursuant to K.S.A. § 61-3804, a section of Article 38 of Chapter 61 governing lawsuits to evict persons from possession of real property or an interest in real property.

[20] 400 B.R. 795 (Bankr. D. Utah 1984).

12

decide just the preliminary issue—whether there is a lease between the Trust and Debtor which may be enforced in the pending eviction proceeding.[21]

The Court finds the testimony and exhibits fail to prove that the Contract was terminated in April 2016. The evidence supporting the Trust is the parties' stipulation that "[o]n or around April 20, 2016, David L. Miller told Debtor that he did not need to make any more payments on the house and that all payments prior would be treated as rent."[22] Also, David L. Miller testified that on April 20, 2016, the Contract terminated and Debtor became a tenant at will.

But additional evidence that the Contract was not terminated causes the Court to find the Trust has not proven termination of the Contract and substitution of a lease in its place. Just because David L. Miller said the Contract was terminated does not make it so. Debtor testified he understood the 2016 change was that he no longer needed to make monthly payments, but otherwise the Contract remained in place. The Contract payment history includes the following notation, which makes no reference to termination or a lease: "[M]ay no longer had to make payments Agreement made between

---

[21] The Trust apparently assumes that if the Contract became a lease, relief from stay is the consequence.

[22] Doc. 58 p. 2 ¶ 8.

David Sr.[,] Jr.[,] and Norma."[23] Conduct of both Debtor and David L. Miller after 2016 indicates mutual belief that the Contract remained in place. The May 15, 2019, draw note between Debtor and one of David L. Miller's companies states it is secured by Debtor's pledge of the Residence. On April 4, 2023, the Trust, through counsel, sent a letter to Debtor's counsel reciting the terms of the Contract, quoting the default provision, and demanding Debtor vacate the Residence because "Debtor has made no payments under the Contract for Deed in years."[24] On June 1, 2023, David L. Miller signed a letter, hand delivered and posted at the Residence, addressed to "David B. Miller and All Occupants," stating:

> As I am sure you are aware, I declared the Contract for Deed null and void because of your failure to make payments under it when due, and gave you until May 31, 2023 to vacate my house ...
> If you fail to leave the house at the expiration of three days from the date of this letter, without notice I will commence an action in the District Court of Johnson County, Kansas under K.S.A. Section 61-3803, to eject and remove you and any other occupants from the property.[25]

---

[23] Exh. B.

[24] Exh. 8.

[25] Exh. 9.

14

The threatened state court action for eviction under K.S.A. § 61-3803 was commenced on June 6, 2023. Like the April 4, 2023, demand letter, the petition recites the Contract terms, quotes the default paragraph, and demands Debtor vacate the Residence because payments have not been made under the Contract in many years.

The Court finds the Trust is not entitled to relief from stay for cause under § 362(d)(1) to pursue an eviction action. The Court rejects the Trust's predicate for such relief—the Contract was not terminated in April 2016 and Debtor did not became a tenant at will.

> **D. Because the estate has equity in the Residence and under Kansas law enforcement of the forfeiture remedy would be rejected as inequitable, the Court rejects the Trust's position that it is entitled to relief from stay under § 362(d)(2)(A).**

Even if the Contract was not terminated in April 2016, the Trust nevertheless argues it is entitled to relief from stay because the bankruptcy estate has no "interest" in the Residence. The Trust does not define what it means by a lack of an "interest." For purposes of § 362(d)(2), it could be the Trust is asserting either (1) that the Residence is not property of the estate or (2) that the estate has no equity for purposes of § 362(d)(2)(A). However, the first construction is negated by the undisputed fact that in the Contract the Trust granted the Debtor possession of the Residence and a right to obtain

title upon full performance. Therefore, the Court understands the Trust's contention that the estate has no "interest" as asserting the estate has no equity within the meaning of § 362(d)(2)(A). Evaluation of this position requires an exploration of the Contract rights of the Trust and the Debtor under Kansas law.

### 1. Debtor acquired equity in the Residence through partial performance of the Contract for deed.

A contract for deed, also referred to as an installment land contract, is an agreement by the owner/seller of real property to convey title when the purchaser has paid a specified price and also performed his other duties under the contract.[26] The purchaser, who takes possession when the contract is executed, becomes the equitable owner of the realty, and the seller retains legal title as security to protect future payments.[27] Under the contract, the "purchaser is given immediate possession under his contract, with the right to use the property as his own to the same extent as is customary with a mortgagor."[28] As in this case, the buyer usually maintains the property and

---

[26] William Hines, Forfeiture of Installment Land Contracts, 12 U. Kan. L. Rev. 475, 476 (1964) (available at HeinOnline.org).

[27] *Graham v. Claypool*, 26 Kan. App. 2d 94, 95-96, 978 P.2d 298, 299 (1999). The rule stated in the text applies whether or not the deed is placed in escrow pending the purchaser's full payment. *Id.* at 96, 978 P.2d at 300.

[28] *Roberts v. Osburn*, 3 Kan. App. 2d 90, 96, 589 P.2d 985, 991 (1979) (quoting *Torluemke v. Abernathey*, 174 Kan. 668, 671, 258 P.2d 282, 284 (1953)).

16

pays insurance and taxes. "The down payment is usually small with the balance to be paid in regular installments over an extended period of time."[29] Hence, in significant respects, the contract for deed seller's position is analogous to that of a mortgagee and the purchaser's position analogous to that of a mortgagor. However, in contrast to the remedies in a note secured by a mortgage, a contract for deed will usually provide "that on default of the purchaser in making payments or performing any of his other covenants under the contract, the seller may declare a forfeiture terminating all rights of the purchaser and retain all payments made on the contract as liquidated damages."[30]

Under § 362(d)(2)(A), relief from stay may be granted if the debtor does not have equity in the estate property in issue. Generally, "[a] debtor has no equity in the property for purposes of section 362(d)(2) when the debts secured by liens on the property exceed the value of the property."[31] Therefore, in an installment purchase of real property where legal title passes to the debtor upon closing and a mortgage is granted to the lender to secure the obligation to make future payments, equity is determined by the difference between the

---

[29] Hines, *supra* note 26, at 476.

[30] *Id.*

[31] 3 *Collier on Bankruptcy* ¶ 362.07 (Richard Levin & Henry J. Sommer eds., 16th ed.).

17

property value and the value of the mortgage lien, and additional liens, if any. Because of the similarity of contracts for deed with mortgage transactions, in this case the Court determines the estate's equity in the Residence is the difference between the property value and the payments remaining due under the Contract. The Contract provides the deed will be transferred by the Trust to the Debtor upon the payment of $241,000, without interest. Debtor has paid approximately $100,000 in monthly installments, which would leave a balance owed of about $141,000, if Debtor is in fact liable for the balance. Debtor testified the Residence has a value of approximately $500,000.[32] The estate's equity is therefore estimated to be $359,000.[33] Lack of equity, the condition for relief from stay under § 362(d)(2)(A), is not present.

### 2. Under Kansas law, the Contract forfeiture remedy is not enforceable.

When moving for relief from stay, the Trust argues the foregoing conclusion that the estate has equity is not correct because the Trust is entitled to exercise its Contract remedy of forfeiture, thereby eliminating the Debtor's equity. The Trust contends that Debtor's failure to make monthly

---

[32] The Trust did not present evidence of the value of the Residence, or question Debtor's assertion of a $500,000 value.

[33] The Court's estimation of the estate's equity is for the purpose of ruling on the Motion for relief form stay. It will not control any future events in this bankruptcy case and is not intended to have a preclusive effect in any other litigation.

18

payments since April 2016, constitutes a default, entitling the Trust to enforce forfeiture in accord with the Contract remedy provision. The relevant portion provides: if Debtor is in payment default the seller at his option may "declare the [Contract] null and void, and all rights of the Buyer . . . shall . . . end and all money paid and improvements made . . . shall then be retained by Seller as rent and liquidated damages for the said non-performance and Seller shall . . . be entitled to immediate possession of said real estate without notice."[34] The Court finds the Trust's argument that the estate lacks equity because the Trust may pursue the forfeiture remedy is contrary to Kansas law and must be rejected.

Preliminarily, the Court finds the Trust has waived its right to declare default for nonpayment under the Contract. It is undisputed that during a meeting on April 20, 2016, David L. Miller told Debtor the monthly Contract payments were no longer required, David L. Miller expected Debtor to rely upon the change, and Debtor ceased making payments in reliance on the representation. David L. Miller never discussed the matter further with Debtor. It would be inequitable for the Court to allow the Trust to now declare a default for nonpayment.

---

[34] Doc. 14 p. 8.

More importantly, under the facts and circumstances of this case, the Court finds the estate's interest in the Residence renders the remedy of forfeiture inequitable and unenforceable under Kansas law. Kansas case law reflects a long and consistent pattern of construing forfeiture remedies in contracts for deed in two alternative manners. First, if the buyer has little equity in the purchased property, the contract default remedies, including forfeiture, may be enforced according to the stated terms. Second, a purchaser's accumulation of equity in the property may be sufficient to preclude forfeiture as a default remedy, even though the full purchase price has not been paid.[35]

A concise summary of the two alternatives is provided by the Kansas Supreme Court in *Stevens v. McDowell,* a 1940 case.[36] As to the first alternative, the *Stevens* court states:

> If the down payment by the . . . vendee has been negligible, and his monthly payments have been but few or have only been paid irregularly, to the manifest loss of the . . . vendor, the contract will ordinarily be enforced according to its terms.[37]

---

[35] *See Smith v. Harding*, No. 100,973, 2010 WL 2044920 (Kan. Ct. App. May 14, 2010).

[36] 151 Kan. 316, 98 P.2d 410 (1940).

[37] *Id*. at 319, 98 P.2d at 413 (citing four cases, the oldest of which is *Roberts v. Yaw*, 62 Kan. 43, 61 P. 409 (1900)).

The second alternative construction of seller's remedies for default of a contract is described in *Stevens* as follows:

> But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial improvements have been made by the . . . vendee, then equity may not permit the interest of the . . . vendee to be summarily extinguished in forcible detainer, but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished.[38]

There is no case defining the extent of interest a purchaser must hold before forfeiture becomes inequitable. As one commentator has observed,

> No particular pattern is discernable in the cases where forfeiture has been held inequitable. In several cases the proportion of the purchase price already paid was found to preclude forfeiture. Likewise, substantial improvements are sometimes enough to move the court to deny forfeiture. In *Holman v. Joslin* the source of inequity seemed to be the fact that the land had quadrupled in value.[39]

In support of its position the bankruptcy estate has no equity (interest) in the Residence because the Trust may enforce the forfeiture remedy, the

---

[38] *Id*. (citing eleven cases, the oldest of which is *Courtney v. Woodworth*, 9 Kan. 443 (1872)).

[39] Hines, *supra* note 26, at 485 (citations omitted).

21

Trust relies on *Pickens v. Campbell*.[40] In that case, the Kansas Supreme Court affirmed enforcement of the contract for deed forfeiture remedy stated in language nearly identical to the subject Contract remedy provision. But *Pickens* is clearly distinguishable from this case and does not support the Trust's position. The issue in *Pickens* was whether, for purposes of estate administration, the *seller's* interest had been correctly considered to be real rather than personal property. The Kansas Supreme Court held that it was real property because the forfeiture clause expressed the intention of the parties that title not pass until payment.[41] The court did not discuss whether the *purchaser* had acquired an interest—whether the payments by the purchaser had been negligible or whether given the history of performance of the contract for deed, the purchaser acquired an interest before payment in full. There was no discussion of whether forfeiture was equitable under the circumstances presented.

In this case, when the circumstances of the transaction and history of performance are considered, the Court finds forfeiture would be inequitable. The estate has possession of the Residence. Debtor made payments under the

---

[40] 104 Kan. 425, 179 P. 343 (1919).

[41] *Id.* at 428, 179 P. at 345 (relying on *Brown v. Thomas*, 37 Kan. 282, 286, 15 P. 211, 213 (1887)).

Contract from November 2012 to April 2016 in the amount of approximately $100,000. Debtor remodeled the kitchen and added a bathroom. The Contract provides Debtor with the right to purchase the Residence, which has a value of approximately $500,000, for the balance remaining on the $241,000 purchase price, or about $141,000. Under Kansas law, the bankruptcy estate has an interest in the Residence sufficient for denial of enforcement of the forfeiture remedy included in the default paragraph of the Contract. The Court therefore concludes under Kansas law the Trust may not enforce the Contract forfeiture remedy, thereby depriving the bankruptcy estate of its equity in the Residence.

### 3. The Trust's Motion for relief from stay under § 362(d)(2)(A) is denied.

Relief from stay of an act to acquire possession of the Residence is not available under § 362(d)(2)(A) if the estate has equity in the Residence. As discussed above under the facts of this case, the estate has significant equity because the amount owed under the Contract to acquire the deed is less than the value of the Residence. The Trust's argument that it can extinguish that equity through enforcement of the Contract forfeiture remedy is denied because under Kansas law enforcement of the Contract forfeiture remedy

Case 23-20725    Doc# 70    Filed 11/15/23    Page 23 of 26

would be inequitable. The Motion for relief from stay under § 362(d)(2)(A) is denied.

### E.  The Trust's three additional arguments do not provide a basis to grant relief from stay.

The Trust in its trial brief presents three additional arguments, but none of them provide support for this Motion. The first is that Debtor's lack of unclean hands, alleged to have resulted from his failure to notify David L. Miller of the sales of the three houses that were being flipped, deprives him of any equitable interest under the Contract. The alleged wrongful conduct does not relate to the Contract under which the bankruptcy estate acquired its interest in the Residence.

The second additional argument is that the amount owed by Debtor to Highland Park Investments under the May 15, 2019, draw note would offset any buildup of equity under the Contract. The amount owed by Debtor to Highland Park Investments under that note was not secured by a recorded mortgage of Debtor's interest in the Residence. Debtor's obligation to the Trust under the draw note is a matter for resolution based upon a proof of claim, not a motion for relief from stay.

The third argument is that any equity that Debtor might have in the Residence "would not permit him to continue to occupy it, as the applicable

24

remedy would be equitable foreclosure."[42] Again, this position does not support a motion for relief from stay.

### III.  Conclusion

For the foregoing reasons, the Court denies the Trust's motion for relief from stay under § 362(d)(1) and (2) on the basis that the estate lacks an interest in the Residence. The Court rejects the Trust's contentions that the Contract for purchase of the Residence was terminated in April 2016 or, if the Contract remains in effect, because of the Debtor's alleged payment default the Trust is entitled to enforce the Contract remedy of forfeiture, thereby depriving the estate of its equity in the Residence. Furthermore, alternative arguments based upon transactions between David L. Miller and Debtor other than the Contract are not relevant to the Motion for relief from stay.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

### Judgment

Judgment is hereby entered denying the motion of the David L. Miller Revocable Trust Dated February 26, 1996 for relief from stay. The judgment

---

[42] Doc. 53 p. 10 (apparently referring to the Trust's possible foreclosure remedy).

based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**It is so ordered.**

###