**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| In re: | ) | |
| David Brian Miller | ) | Case No. 23-20725 |
| Debtor. | ) | Chapter 11 |

# THIRD AMENDED SUBCHAPTER V SMALL BUSINESS PLAN OF REORGANIZATION FOR DEBTOR DAVID BRIAN MILLER, DATED SEPTEMBER 23, 2024

This Amended Plan of Reorganization is presented to you to inform you of the proposed (Amended) Plan for restructuring the debt of Proponent David Brian Miller (the "Debtor"). and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, THE OBJECTION DATES WILL BE PROVIDED IN A SEPARATE NOTICE.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [DATE TO BE SET BY THE COURT IN A SEPARATE NOTICE].**

**THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**
**RYAN A. BLAY, 15095 WEST 116TH STREET, OLATHE, KS 66062.**

**A HEARING ON THE CONFIRMATION OF THIS PLAN IS SCHEDULED FOR A DATE AND TIME TO BE SET BY THE COURT IN A SEPARATE NOTICE.**

Your rights may be affected by this Plan of Reorganization. You should consider discussing this document with an attorney.

Dated: September 23, 2024

Respectfully submitted,
WM Law

/s/ Ryan A. Blay

Ryan A. Blay, MO #KS001066; KS #28110
15095 W. 116th St.
Olathe, KS 66062
Phone (913) 422-0909 / Fax (913) 428-8549
blay@wagonergroup.com
ATTORNEY FOR DEBTOR(S)

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PLAN | Pages 3 – 17 |
| II. | EXHIBIT A | ASSETS – Schedules A/B |
| III. | EXHIBIT B | MONTHLY OPERATING REPORT(S) FILED WITH THE COURT |
| IV. | EXHIBIT C | PROFIT AND LOSS |
| V. | EXHIBIT D | LEASES – Schedule G – Assumption of Executory Contracts and Unexpired Leases |
| VI. | EXHIBIT E | PROJECTIONS OF CASH FLOW/EARNINGS POST CONFIRMATION PERIOD |
| VII. | EXHIBIT F | LIQUIDATION ANALYSIS |

# ARTICLE I

## 1.1 Definitions

A. DEBTOR: David Brian Miller, an individual person

B. CREDITORS: All creditors of the Debtor holding claims for unsecured debt, liabilities, demands, or claim of any character whatsoever, including any under-secured creditors.

C. SECURED CREDITORS: All creditors who hold a lien, security interest or other encumbrance which has been properly perfected, as required by law with respect to the property owned by the Debtor, prior to the filing of this case, or thereafter as authorized and ordered by the Court.

D. PRIORITY CREDITORS: All creditors who are deemed a priority under Section 507 of the Bankruptcy Code.

E. PLAN: Debtor's proposed reorganization plan in its present form or as it may be amended or supplemented from time-to-time hereafter.

F. COURT: United State Bankruptcy Court for the District of Kansas, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

G. CLAIM: A duly listed or timely filed claim which is allowed and ordered paid by the Court.

H. EFFECTIVE DATE: Fourteen (14) days after the date on which the order confirming the Plan becomes final and non-appealable.

I. ADMINISTRATIVE EXPENSES: Claims against the Debtor arising under 11 U.S.C. § 507(a)(1) and allowed by the Court.

## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

## 1.2 Nature of the Debtor's Business

David Brian Miller ("Miller" or the "Debtor") is an individual person and Leawood, KS resident. Mr. Miller operates three businesses: (a) Royal Seamless Gutter, Inc., a Kansas for-profit corporation in which the Debtor owns a 95% interest and the business itself owns the remaining 5%; (b) 99.5% ownership of Premier Properties, LLC, a Kansas limited liability company operating a 10-plex in Pleasant Hill, MO and (c) DALP Investments, Inc., a Kansas for-profit corporation owning the remaining .5% interest in Premier Properties, LLC and a single piece of real estate in Kansas City, MO. The Debtor intends, unless otherwise disclosed within, to continue operation of each of these business lines but reserves the right to terminate one or more of these businesses to focus on the most profitable at his discretion.

As part of the Debtor's business operations, he uses two vehicles titled in his individual name: A 2019 Ford F-250 Crew Cab, and a 2021 Nissan Murano. Accordingly, the Debtor proposes in this Amended Plan to retain both vehicles and pay on the secured claims encumbering both vehicles. These are separate and above trucks and other equipment owned by Royal Seamless Gutter, Inc.

## 1.3 Filing of the Debtor's Chapter 11 Case

On June 28, 2023, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court for the District of Kansas.

## 1.4 Legal Structure and Ownership

As mentioned above, Mr. Miller in an individual with 100% control of each of the three businesses described in Section 1.2, above.

## 1.5 Debtor's Assets

The Debtor's assets consist of two motor vehicles, a boat, a 5th Wheel, household goods and electronics, firearms and clothing, CommunityAmerica Credit Union bank accounts, and an East Texas Dump Trailer. He also has other assets with either a $0 or unknown value. These include 2 dogs, term life

insurance, Venmo and Paypal accounts, interests in the 3 businesses noted in Section 1.2, ahove, net loss carry forwards, and an equitable interest in the Debtor's home. A list of assets marked as **Exhibit A** is attached in the form of Schedule A/B from Debtor's petition as amended.

## 1.6 Debtor's Liabilities

The Debtor scheduled five secured claims in his schedules: A debt to Hopkins Management for the East Texas Dump Trailer for approximately $10,000, a debt to CommunityAmerica Credit Union, with a claim filed by the creditor of $14,630.85, and three debts to Mazuma Credit Union. These debts for $17,284.45, $18,769.10 and $18,701.93 are secured by, respectively, a Nissan Murano, a 5th Wheel, and a boat,

Along with that, The Debtor has an ongoing domestic support obligation with Wanda Miller but is current on payments and is continuing to pay directly through his employment. A prior Internal Revenue Service tax claim was resolved, with the claim reduced to $0.

There are some general unsecured debts scheduled as well, including claims filed by Discover Bank, Highland Park Investments, Chase, MarksNelson[1], Spectra Metal Sales, Capital One, Premier Bankcard, Armstrong Teasdale, Schilling Law, LLC, and Synchrony Bank (2 claims), These claims total over $630,000. Additionally, None of the following creditors filed claims, but are still eligible to participate in distributions through the Chapter 11 plan:. Avant/Webbank, CommunityAmerica Credit Union, Credit One Bank,, Mission Lane Tab Bank, St. Luke's Hospital of Kansas, and TBOM/Aspire.

## 1.7 Current and Historical Financial Conditions

The Debtor's biggest struggle has been the real estate market. High interest rates mean less mortgage transactions and delays in selling real estate. Mr. Miller has managed properties and flipped homes in the past, and has lengthy experience in real estate. However, Premier Properties is particularly attuned to the market conditions, operating a 10-plex that is beyond the standard single-family real estate traditionally sought.

The Debtor believes that if he is allowed to reorganize, he can now pay operating costs along with secured creditors and a significant dividend to general unsecured creditors to maintain his businesses and ultimately grow them. .

Unsecured creditors holding allowed claims will receive an amount equaling not less than would have been paid under Chapter 7 of the Bankruptcy Code. See attached copies of Debtor's Monthly Operating Reports filed since the filing of the bankruptcy case, for the months of May, June, and July 2024 Marked as **Exhibit B**. (August 2024's Report is due in September 2024 after the filing of this Plan), and the Debtor anticipates filing the September, October, and perhaps November 2024 operating reports before any hearing on confirmation of this Plan.

## 1.8 Events Leading to the Filing of the Bankruptcy Case

The primary driver of the bankruptcy filing was litigation commenced by the Debtor's father, David L. Miller. David L. Miller operates two entities. The first, the David L. Miller Revocable Trust Dated February 26, 1996, is the legal owner of the Debtor's home. The Debtor and the Revocable Trust entered into a Contract for Deed for the Debtor to purchase the real estate in Leawood, KS. The Debtor made payments on the Contract for Deed until he was directed to stop making payments by David L. Miller. Nonetheless, the trust took the unreasonable position in the state court pleadings that non-payment consisted of a default which led to an option by the trustee to terminate the contract for deed. Not only did this argument contradict the oral agreement between the parties, it was an argument that was later abandoned in Bankruptcy Court arguments.

[1] As resolved by the Bankruptcy Court's Order Sustaining Debtor's Objection to Claim

The other litigation was commenced by Highland Park Investments, Inc. and concerns separate arrangements made between the Debtor and the Creditor.

**1.9 Significant Events During the Bankruptcy Case**

Since the filing of the bankruptcy the following is a list of significant events:

- The Debtor received approval to employ WM Law as counsel..
- The Debtor defended a Motion for Relief from Stay filed by the David L. Miller Revocable Trust two days after the filing of the bankruptcy petition, brought to an evidentiary hearing. The Court denied the Motion for Relief from Stay.
- In an effort to resolve objections to confirmation of the Chapter 11 Subchapter V Plan and votes opposing confirmation, the Debtor was willing to enter formal mediation but found success through communications between the Subchapter V Trustee and David L. Miller, directly (as his counsel had withdrawn from representation). Resolution of this matter is memorialized in this Amended plan in a new section treating the claim of David L. Miller's Revocable Trust on the Debtor's homestead.
- The Debtor brought an objection to the claim filed by the Internal Revenue Service ("IRS"). The IRS amended its claim, resolving the objection.
- The Debtor has filed his monthly operating reports for August 2023 through July 2024 and is working on September 2024's to incorporate into this Plan.

**1.10 Projected Recovery of Avoidable Transfers**

The Debtor does not anticipate any litigation to seek recovery of avoidable transfers.

# ARTICLE 2

## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interests holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

## 2.1 Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses such as attorney fees are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class.

### A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1. If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2. If the Debtor received goods it has purchased in the ordinary course of business within twenty (20) days before the Petition Date, the value of the goods received is an Administrative Expense.

3. Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | None | Payment through the Plan as follows: |
| Administrative Tax Claim | None | Payment through the Plan |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | Payment through the Plan as follows: |

| | | |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | Counsel estimates post-filing fees at approximately $20,000, exclusive of any funds held in trust. | After Bankruptcy Court approval, Payment through the Plan as follows: Retainer to be paid from funds held in Attorney's Trust Account, then $500 per month for 40 months commencing in January 2025.<br><br>Additional fees paid by Debtor, after Bankruptcy Court approval. |
| Clerk's Office fees | None | Paid in full on the Effective Date. |
| Other Administrative Expenses | None | Payment through the Plan as follows: |
| Trustee | Kent Adams | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan as follows: Within 30 days of Order of Approval or as negotiated with the Trustee. Debtor anticipates these expenses to total approximately $4,000. |

**B. Priority Tax Claims**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $0 per the amended proof of claim filed by the IRS on November 8, 2023 | n/a | Payment Treatment: The Debtor proposes no payment to the IRS as any claim has been resolved.<br><br>Interest rate: n/a |
| Kansas Department of Revenue | $0 | n/a | Payment Treatment: n/a. The Debtor is unaware of any tax liability to the KDOR and does not accept a claim being filed by KDOR.<br><br>Interest rate: n/a<br><br>. |

**2.2 Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**A. Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims.

Under § 506 of the Code, if the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: CommunityAmerica Credit Union (filed as Claim #18)<br><br>Lien on Debtor's 2019 Ford F-250 Super Duty<br>Allowed Amount: $14,630.85<br>Allowed Secured Amount $14,630.85<br>Current amount owed as of the date of this Plan: $1836.70 | No | Unimpaired | Treatment of Lien: Fixed monthly payments of $612.50 (the contractual rate) which includes interest on the allowed secured claim at 3.99%. CommunityAmerica Credit Union shall retain its lien on the collateral until the allowed secured claim is paid in full. The Debtor's business operation has been making adequate protection payments to CommunityAmerica Credit Union during the pendency of this case<br><br>Payments shall conclude prior to the expected date of confirmation of this Plan (in December 2024) and shall not be considered in the debtor's cash flow projections. |

| | | | | |
|---|---|---|---|---|
| 1 | Secured Claim of Mazuma Credit Union (filed as Claim #9)<br><br>Lien on Debtor's 2021 Nissan Murano<br><br>Allowed Amount: $17,284.45<br><br>Allowed Secured Amount: $17,284.45<br><br>Current amount owed as of the date of this Plan: $9903.42 | No | Impaired | Treatment of Lien:<br><br>Fixed monthly payments with interest on the allowed secured claim at 7.0%. Mazuma Credit Union shall retain its lien on the collateral until the allowed secured claim is paid in full. \|<br><br>Regular monthly payments of $305.79<br><br>Payments begin:<br>January 2025<br>Payments end: December 2027 |
| 1 | Secured Claim of Mazuma Credit Union (filed as Claim #10)<br><br>Lien on Debtor's 2019 Forest River Impression 5th Wheel<br><br>Allowed Amount: $18,769.10<br><br>Allowed Secured Amount: $18,769.10<br><br>Current amount owed as of the date of this Plan: $15,488.01 | No | Impaired | Treatment of Lien:<br><br>The Debtor shall surrender the 5th Wheel to Mazuma in full satisfaction of its secured claim. Within 60 days of disposition of the 5th Wheel, Mazuma shall amend its claim to that of a general unsecured claim with an accounting to this Court and the Debtor of the disposition of the vehicle and application of funds to the outstanding balance.\|<br><br>Regular monthly payments of $n/a<br><br>Payments begin:<br>n/a<br>Payments end: n/a |

| | | | | |
|---|---|---|---|---|
| 1 | Secured Claim of Mazuma Credit Union (filed as Claim #11)<br><br>Lien on Debtor's Bentley Boat<br><br>Allowed Amount: $18,701.93<br><br>Allowed Secured Amount: $18,701.93<br><br>Current amount owed as of the date of this Plan: $15,120.64 | No | Impaired | Treatment of Lien:<br><br>The Debtor shall surrender the Bentley Boat to Mazuma in full satisfaction of its secured claim. Within 60 days of disposition of the 5th Wheel, Mazuma shall amend its claim to that of a general unsecured claim with an accounting to this Court and the Debtor of the disposition of the vehicle and application of funds to the outstanding balance.\|<br><br>Regular monthly payments of $n/a<br><br>Payments begin: n/a<br>Payments end: n/a |
| 1 | Secured Claim of Hopkins Management (no claim filed)<br><br>Lien on Debtor's East Texas Dump Trailer<br><br>Allowed Amount: $n/a<br><br>Allowed Secured Amount: $/na | No | Impaired | Treatment of Lien:<br><br>Hopkins Management did not file a claim and the Debtor is unable to verify if this is a true secured transaction and if Hopkins Management properly perfected any lien on the collateral. Thus, to the extent this is a secured agreement, the Debtor shall not pay on this claim in his plan. Instead, Royal Seamless, who maintains and uses the dump trailer, shall pay pursuant to the terms of the agreement with creditor and maintain use of (and insurance for) the collateral as required by any agreement between the parties.<br><br>To the extent this obligation is for an executory contract and not a secured claim, the Debtor will assume the contract.<br><br>Regular monthly payments of n/a<br><br>Payments begin: n/a<br>Payments end: n/a |

**B. Classes of Priority Unsecured Claims**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | Priority unsecured claims pursuant to Section 507(a)(1), (4), (5), (6), and & (7)<br><br>**Wanda Miller, ongoing domestic support obligation.** | Unimpaired | Debtor will continue to make direct payments for the domestic support obligation until the obligation is satisfied. |

**C. Classes of General Unsecured Claims**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

The following chart identifies the Plan's proposed treatment of Class 3, which contain general unsecured Claims against the Debtor. None of the claims listed are for insiders. All are impaired.

| Class # | Description | Insider? (Yes or No) | Treatment |
|---|---|---|---|
| 3 | General unsecured class<br><br>Includes:<br>Discover Bank ($5,040.27, claim #1); Highland Park Investments ($172,268.49; $145892.47; $102665.07; $58739.88 Claims #2-5, as amended); Chase ($3124.16, claim #7); MarksNelson ($715, as allowed by Doc. #50, Order Granting Debtor's Objection to Proof of Claim, claim #8); Spectra Metal Sales, Inc. ($132924.56, claim #12); Capital One ($1385.38, claim #13); Premier Bankcard LLC ($794.21, claim #14); Armstrong Teasdale LLP ($8283.43, claim #15); Synchrony Bank ($990.17, claim #16); Synchrony Bank | Impaired | For the unsecured claims, General Unsecured Creditors shall share in payments from disposable monthly income following years 2-5. The Debtor does not anticipate having funds available to pay general unsecured creditors in Year 1 of the plan due to administrative costs and payoff of the Debtor's Ford F-250 except as described below.<br><br>**The Debtor agrees to pay in his disposable income pursuant to 11 U.S.C.** |

| | | | |
|---|---|---|---|
| | ($1361.77, claim #17); CommunityAmerica Credit Union ($9443.98, claim #19), unpaid interest from Mazuma Credit Union claims #10 and #11; Schilling Law ($15,000, Claim #21). This class will also include deficiency claims to Mazuma Credit Union for the Bentley Boat and 5th Wheel Camper surrendered in full satisfaction of its secured claims, provided the claims are timely amended to that of general unsecured creditors. | | **§1191(c)(2)(A).**<br><br>In addition, the Debtor is holding approximately $4,000 on hand to pay the unsecured creditors within 30 days of the Effective Date on a pro rata basis. This amount satisfies the $4,000 in post-petition gambling identified by the Office of the United States Trustee in its Objection to Confirmation of the Plan (Doc. #96). |
| | Avant/Webbank, Credit One Bank, Mission Lane Tab Bank, Schilling Law, LLC St. Luke's Hospital TBOM/and Aspire of Kansas<br>To the extent Avant/Webbank, Credit One Bank, Mission Lane Tab Bank, St. Luke's Hospital TBOM/Aspire of Kansas claims were not filed by a third party, they are permitted to participate in distributions notwithstanding their failure to file claims. Payments will be made to the best known address in Debtor's possession., | | |

**D. Classes of Equity Interest Holders**

Equity Interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the classes of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition Debtor had issued multiple classes of stock.]

| Class # | Description | Insider? (Yes or No) | Impairment |
|---|---|---|---|
| 4 | Equity Interest Holders:<br>David Brian Miller, Debtor | Yes | none |

**E. Special class for David L. Miller, trustee of the David L. Miller Revocable Trust, as title owner of the Debtor's homestead real estate**

David L. Miller as trustee of the David L. Miller Revocable Trust is the title owner of the real estate. Although the Debtor was instructed years ago to cease payment on the Contract for Deed entered

into by the parties in October 2012, the Debtor wishes to resolve the objections raised by the David L. Miller Revocable Trust, resolve the pending Objection to Claim 20, and receive a ballot in support of confirmation. Accordingly, the Debtor proposes to resume payments of $1,500 per month commencing January 2025 and continuing until December 2029. During this time, the Debtor will attempt to refinance the obligation and pay it off in full. The amount of the allowed claim is $145,150, with an allowed interest rate of 6.0% to be paid on the claim. All remaining provisions of the Contract for Deed remain in full force and effect. Upon satisfaction of the secured claim, David L. Miller or any successor trustee or other successor shall produce a Warranty Deed to the Debtor to record in the Johnson County, Kansas Recorder of Deeds office.

| Class # | Description | Insider? (Yes or No) | Impairment |
|---|---|---|---|
| 5 | David L. Miller, trustee of the David L. Miller Revocable Trust | No | Yes |

**<u>Estimated Number and Amount of Claims Objections</u>**

A Disputed Claim is a claim that has not been allowed or has been disallowed by a final non-appealable order, and as to which either:

(i) A proof of claim has been filed or deemed filed, and the Debtor of another party in interest has filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or liquidated.

The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will objected to.]

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| | The Debtor does not anticipate filing any claims objections beyond the objections already filed. However, to the extent future filed tax returns, amended returns, or filings indicate a change in the amount due to any taxing authority, the Debtor may initiate a claim objection within the time frame specified above. | n/a |

**2.3 <u>Treatment of Executory Contracts and Unexpired Leases</u>**

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e., accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

Check all that apply.

**[X] Assumption of Executory Contracts**

The Executory Contracts listed below shall be assumed by the Debtor unless otherwise noted. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court as set an earlier date.

***<u>The Debtor formally accepts the lease with Anytime Fitness and, to the extent appropriate, Hopkins Management</u>***

OR

[ ] Rejection of Executory Contracts and Unexpired Leases

The Executory Contracts shown on Exhibit ___ shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit ____, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**2.4 <u>Means for Implementation of the Plan</u>**

Upon Confirmation of the Plan, the Debtor shall make direct payments to all the secured, priority and general unsecured creditors per the provisions above, unless otherwise noted, from its income and any contributions from the Debtor's principal. Debtor believes the market for its services continues to stabilize following lifting of the restrictions from the COVID-19 pandemic.

Upon Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

Pursuant to 11 U.S.C. § 1192(c)(2)(A), all of the projected disposable income of the Debtor to be received in the 3-year period, or such longer period not to exceed five (5) years as the Court may fix, beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan.

**2.5 Disbursing Agent**

Distributions to Creditors provided for in this Plan will be made by the Debtor, directly.

**2.6 Post-Confirmation Management**

The Post-Confirmation Officers/Management of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| David Brian Miller | Debtor | Debtor is an individual person and operates his businesses accordingly. |

**2.7 Tax Consequences of the Plan**

**Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.**

The following are the anticipated tax consequences of the Plan: There should be no tax consequences to the Debtor.

**2.8 Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in **Exhibit E**.

# ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1 Ability to Initially Fund Plan**

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.

**3.2 Ability to Make Future Plan Payments and Operation Without Further Reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in **Exhibit E**.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes (and proposed Chapter 11 plan payments) of $130 in years 1-3, $400 in year 4, and $600 in year 5. The final Plan payment is expected to be paid in **December 2029. The plan is set as a 5 year plan.**

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

# ARTICLE 4

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive a in Chapter 7 liquidation. A liquidation analysis is attached hereto as **Exhibit F.**

# ARTICLE 5

## DISCHARGE

On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

# ARTICLE 6

## GENERAL PROVISIONS

### 6.1 Title to Assets

Except as otherwise provided in the Plan or in the order confirming the Plan,

(i) confirmation of the Plan vests all of the property of the estate in the Debtor, and
(ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

### 6.2 Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3 Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4 Retention of Jurisdiction by the Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i) To make such orders as are necessary or appropriate to implement the provisions of the Plan and to resolve any disputes arising from implementation of the Plan;
(ii) To rule on any modification of the Plan proposed under Section 1127;
(iii) To hear and allow all applications for compensation to professionals and other Administrative Expenses;
(iv) To resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases; and
(v) To adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5 Captions**

The headings contained in the Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6 Confirmation of Plan**

The Debtor is an individual. The confirmation of the Plan is treated in 11 U.S.C. § 1191 with the Discharge treated pursuant to 11 U.S.C. § 1192.

**6.7 Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require re-voting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if:
(i) The Plan has not been substantially consummated and
(ii) The Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.8 Creditor Remedies in Event of Default under Plan**

A default under this Plan is defined as a failure to pay two or more consecutive payments under this plan or failure to pay any single payment for 90 days or more from a due date. Any Creditor whose payment is in default may file a Notice of Default with this Court and provide written notice care of Debtor's counsel via e-mail or United States mail, first class. If such default is not cured within 30 days of the Notice of Default, the Creditor may elect to assert a restoration of security interests at contract amounts still owed, and the right of the Creditor to seek liquidation of non-exempt assets.

**6.9 Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion

**6.10 Discharge.**

Pursuant to D. Kan. LBR 4004.1(b), the Debtor shall file a motion with this Court for entry of a discharge after confirmation of the Plan. Nothing in this section shall be construed to override the local rule. Provisions below simply refer to the timing of the entry of said Order following the Motion.

**If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

Dated: September _____, 2024

Respectfully submitted,

/s/ David Brian Miller
David Brian Miller, Debtor

Dated: September 23, 2024

Respectfully submitted,
WM Law

/s/ Ryan A. Blay

Ryan A. Blay, MO #KS001066; KS #28110
15095 W. 116th St.
Olathe, KS 66062
Phone (913) 422-0909 / Fax (913) 428-8549
blay@wagonergroup.com
ATTORNEY FOR DEBTOR(S)

## EXHIBIT A

### ASSETS: Schedules A/B

**EXHIBIT B**

**MONTHLY OPERATING REPORTS FILED WITH THE COURT**

**See May- July 2024 Monthly Operating Reports attached**

**August 2024's report is in preparation.**

## EXHIBIT C

## PROFIT AND LOSS

Tax Returns for the years 2020-2022 are available upon request.

**EXHIBIT D**

**LEASES – Schedule G – Assumption of Executory Contracts and Unexpired Leases**

## EXHIBIT E - PROJECTIONS OF CASH FLOW/EARNINGS
## POST CONFIRMATION PERIOD

| | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
|---|---|---|---|---|---|
| | **1/2025-12/2025** | **1/2026-12/2026** | **1/2027-12/2027** | **1/2028-12/2028** | **1/2029-12/2029** |
| | | | | | |
| **Income:**[2]<br><br>**Salary from Royal Seamless: $5,000/mo gross Air B and B income - $500/mo** | $5,500/month ($66,000 total) | $5,500/month ($66,000 total) | $6,000/month ($72,000 total) – projected increase in salary from Royal Seamless and Air B&B income | $6,100/month | $6,500/month |
| **Expenses**: | $2850/month | $2850/month | $3,350/month – covering inflation and expected increases in expenses | $3,400/month | $3,700/month |
| Net: | $2,650/month | $2650/month | $2,650/month | $2,700/month | $2,800/month |
| Administrative | Estimated $4,000 as a lump sum to Kent Adams, Subchapter V Trustee, upon court approval.<br><br>Estimated attorney's fees of $6,000<br><br>$10,000 total | $6,000 | $6,000 | $2,000 | $0 |
| CommunityAmerica Credit Union | n/a – paid off prior to commencement of plan payments | 0 | 0 | 0 | 0 |
| Mazuma (Murano) | $3,669.48 | $3669.48 | $3669.48 | 0 | 0 |
| Mazuma (5th Wheel) | 0 | 0 | 0 | 0 | 0 |
| Mazuma (Boat) | 0 | 0 | 0 | 0 | 0 |
| David L. Miller Revocable Trust (at $1500 per month) | $18,000 | $18,000 | $18,000 | $18,000 | $18,000 |
| Unsecured Creditors | $4,000 in a lump sum, 30 days following the effective date.[3] | $4,000 | $4,000 | $12,000 | $15,000 |
| | | | | | |
| **Total Plan Payments** | **$31,670 (excluding immediate payment to unsecured creditors) Year 1** | **$31670 Year 2** | **$31,670 Year 3** | **$32,000 Year 4** | **$33,000 Year 5** |

[2] Assuming no sales of real estate.

[3] Debtor has $4,000 cash on hand to pay this upon confirmation in addition to projected revenues..

**EXHIBIT F**

**LIQUIDATION ANALYSIS**

| **Assets:** | | | | |
|---|---|---|---|---|
| Ford F-250 | | $30,000 | | |
| Nissan Murano | | $20,000 | | |
| Forest River 5th Wheel | | $25,000 | | |
| Bentley boat | | $30,000 | | |
| Household goods and electronics | | $5,500 | | |
| Guns and clothing | | $2,000 | | |
| Bank accounts | | $1205 | | |
| Dump Trailer | | $10,000 | | |
| Total Value | | $123,705 | | |
| | | | | |
| Less<br><br>Secured claims<br>CommunityAmerica Credit Union (Ford F-250): $14,630.85<br>Hopkins Management (dump truck): $10,000<br>Mazuma Credit Union (Nissan Murano):<br>$17,284.85<br>Mazuma Credit Union (Forest River 5th Wheel) :<br>$18,769.10<br>Mazuma Credit Union (Bentley Boat): $18,701.93<br>Total: $79,386.73<br><br>Less | | $44,318.27 | | |
| Hypothetical Chapter 7 Trustee Fees | | | | |
| | | | | |
| $9,435.25 | | $34,883.02 | | |
| | | | | |
| | | | | |
| Less | | | | |
| Payments to priority creditors | | $0[4] | | |

[4] The Internal Revenue Service has filed claim 6 for $4,980.17 in priority income tax liabilities stemming from 2022. When 2022 taxes are provided to the IRS and the United States Attorney for the District of Kansas, the Debtor believes the IRS will either accept the Debtor's numbers and eliminate its claim or the Debtor will file an objection to cclaim.

| | | | | |
|---|---|---|---|---|
| Grand Total Value | | $34,883.02 | | |
| **Therefore, the Plan as proposed satisfies the requirements of** | | | | |
| **11 U.S.C. § 1129(a)(7)(ii).** | | | | |